# Provisions of the Special Foreign Assistance Act of 1986 Relative to the Assets of Jean Claude Duvalier

Section 204 of the Special Foreign Assistance Act of 1986 requires the President to freeze or otherwise prevent the dissipation of assets, allegedly stolen by the former president of Haiti, that are the subject of litigation to determine their ownership. The President is not required to freeze assets that are not the subject of litigation by the government of Haiti.

January 2, 1987

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

## I. Introduction and Summary

This memorandum is in response to your request of November 26, 1986, for the opinion of this Office regarding the obligations imposed upon the President by § 204 of the Special Foreign Assistance Act of 1986, Pub. L. No. 99–529 (Act), a provision that mandates that the President provide assistance to the government of Haiti in its efforts to obtain assets allegedly stolen by Jean Claude Duvalier and his associates. We understand that the need for this opinion is prompted by interagency deliberations to determine the substance of the Executive Order required to implement the Act.

In the course of these interagency deliberations, this Office has learned that the Government of Haiti has litigation pending in both Florida and New York which seeks to recover assets allegedly stolen by Jean Claude Duvalier or his associates.[1] In both cases the Haitian government may be required to post bond to secure attachment orders on or otherwise preserve the Duvalier assets pending resolution of the litigation to determine title to the assets.[2] Counsel for the Haitian government has represented to the Department of Justice that Haiti has insufficient funds to post bond. Haiti's counsel has contended that § 204 of the Special Foreign Assistance Act requires that the President expeditiously freeze all Duvalier assets within the jurisdiction of the United States. The Department of the Treasury, however, has taken the position that the President is not required to freeze or otherwise prevent the dissipation of Duvalier assets even if these assets are subject to pending litigation in which Haiti is unable to

---

[1] In this memorandum we shall denominate assets held in the name of Jean Claude Duvalier or his associates that are under the jurisdiction of the United States as "Duvalier assets," without prejudging the issue of who actually has title to these assets.

[2] We understand that, at present, the Government of Haiti has obtained temporary orders restraining the assets until decisions on the posting of bonds and other preliminary matters are rendered.

1

post bond. Treasury concedes that § 204 requires the President to take some action to assist Haiti in its efforts to recover Duvalier assets, but believes that the statutory requirement to provide assistance may be satisfied if the United States undertakes an investigation to discover Duvalier assets within the United States which are not presently the subject of litigation.

We have concluded that § 204 of the Special Foreign Assistance Act requires the President to freeze or otherwise prevent the dissipation of Duvalier assets which are the subject of litigation by Haiti if such action is necessary to preserve these assets during the pendency of litigation to determine their proper ownership.[3] A fair reading of § 204 makes clear that Congress specifically recognized that Haiti was unable to secure the assets without outside assistance and that the purpose of the section was to mandate that the President provide that assistance. Moreover, the legislative history confirms that Congress intended the President to take action that would permit Haiti to have its claims considered on their merits and specifically contemplated that he freeze Duvalier assets in order to accomplish this result. Finally, the President's signing statement recognizes that his discretion under § 204 must be exercised in a manner that reflects § 204's purpose. The clear purpose of the legislation is to preserve the *res* during the pendency of Haiti's legal proceedings.

We also conclude, however, that the President's obligations under § 204 are limited to assisting Haiti with respect to Duvalier assets that are now the subject or that subsequently become the subject of litigation by the government of Haiti. Although the President has discretion under § 204 to take action with respect to any Duvalier assets under the jurisdiction of the United States, the legislation does not require a general freeze of these assets.

## II. Analysis

Section 204(b) of the Special Foreign Assistance Act of 1986 orders the President to exercise authorities referenced by § 203 of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. § 1702, to assist Haiti in its efforts to recover through legal proceedings the assets of Jean Claude Duvalier and his associates. This section provides in full:

> The President shall exercise the authorities granted by section 203 of the International Emergency Economic Powers Act (50 U.S.C. § 1702) *to assist the Government of Haiti in its efforts to recover, through legal proceedings, assets* which the Government of Haiti alleges were stolen by former president-for-life Jean Claude Duvalier and other individuals associated with the Duvalier regime. This subsection shall be deemed to satisfy the requirements of section 202 of that Act.

---

[3] In defining the actions required by § 204, we do not, of course, imply that the President must personally undertake any action. Pursuant to 3 U.S.C. § 301, the President may delegate to "the head of any department or agency in the executive branch, or any official thereof who is required to be appointed by and with the advice and consent of the Senate . . . any function which is vested in the President by law."

2

(Emphasis added.) The authorities referenced in § 203 of IEEPA are extremely broad and include the authority to freeze assets within the jurisdiction of the United States in which a foreign government or foreign national has an interest.[4] Under IEEPA a predicate to the exercise of these authorities is the declaration under § 202 of that Act that a national emergency exists. In light of Congress' statement that § 204(b) of the Special Foreign Assistance Act is deemed to satisfy this requirement, no declaration of emergency is required.[5]

Section 204(b) thus requires that the President exercise authority embodied in IEEPA to assist the government of Haiti to recover Duvalier assets through legal proceedings. A fair reading of § 204 as a whole, however, suggests that Congress has not left the nature of this assistance to unfettered Presidential discretion, because in § 204(a) Congress made findings which indicate its purpose in passing this legislation.[6] The findings in § 204(a) are as follows:

(1) the Government of Haiti believes that former president-for-life Jean Claude Duvalier and other individuals associated with the Duvalier regime illegally diverted to their own use substantial amounts of the assets of the Government of Haiti;

(2) *the Government of Haiti is attempting to locate and recover those assets through legal means*;

(3) *virtually every relevant jurisdiction, both in the United States and abroad, requires the posting of some form of security to*

---

[4] Section 203 provides the following authorities:

(a) (1) At the times and to the extent specified in section 1701 of this title, the President may, under such regulations as he may prescribe, by means of instructions, licenses, or otherwise —

(A) investigate, regulate, or prohibit —
   (i) any transactions in foreign exchange,
   (ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transfers or payments involve any interest of any foreign country or a national thereof,
   (iii) the importing or exporting of currency or securities; and

(B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest,

by any person, or with respect to any property, subject to the jurisdiction of the United States The President has recently exercised these authorities to freeze certain assets owned by the Libyan government or its instrumentalities. Executive Order No. 12544, 51 Fed Reg. 1235 (1986).

[5] We emphasize that in any event the President's exercise of authority under § 204 will not constitute an exercise of authorities under the IEEPA itself but an exercise of powers under the Special Foreign Assistance Act of 1986 that are defined by reference to IEEPA. Therefore the President's action under § 204 will not create any precedent with respect to actions that may be taken under IEEPA.

[6] To interpret § 204(b) without reference to § 204(a) would be to ignore the cardinal rule of statutory interpretation that all parts of a statute are to be given effect *See American Textile Manufacturers Institute, Inc. v. Donovan*, 452 U.S. 490, 513 (1981). Moreover, the findings are the best evidence of the purpose of the statute. They show that Congress specifically considered and reached a judgment regarding the problem at hand. *See* R. Keeton, *Venturing to Do Justice* 94–95 (1969) (arguing that courts must pay special attention to congressional purpose when Congress has considered and prescribed for the specific problem which the legislation addresses).

3

*secure the issuance of orders of attachment or other judicial seizures of property;*

*(4) the Government of Haiti is unable, without outside assistance, to post the necessary security because of its lack of assets;*

(5) Haiti's economic situation could be significantly improved, and the need for external resources reduced, if the Government of Haiti is able to pursue its legal remedies against those who are in large part responsible for the economic crisis in Haiti; and

(6) the United States has a substantial foreign policy interest in helping the Government of Haiti recover any assets which were illegally diverted by those associated with the Duvalier regime.

(Emphasis added.)

The requirement that the President assist Haiti must therefore be read in light of Congress' findings in § 204(a) concerning the nature of the problem Haiti faces and the nature of the assistance Haiti requires. Through these findings, Congress has made clear that (1) Haiti is unable as a practical matter to pursue the assets through legal proceedings, because it is unable to post the necessary bond to secure these assets; and (2) Haiti needs "outside assistance" to preserve the *res* pending litigation. In the event that Haiti, as the findings specifically contemplate, is unable to post bond, the direct inference to be drawn is that the President's assistance to Haiti should be of a kind that will secure the assets until a judgment determining title to the assets may be rendered. Among the authorities Congress has referenced in § 204(b) for this purpose are those that may be used to prohibit the transfer of assets *pendente lite*.[7] Thus, § 204 read as a whole strongly suggests that, in the event Haiti is unable to post bond to secure Duvalier assets, the President must employ the authority delegated by Congress in a manner that will preserve the *res* pending entry of judgment.

The legislative history of § 204 removes any possible doubt that Congress intended that the President freeze Duvalier assets if such action is necessary to prevent the assets from being dissipated before the conclusion of litigation. Representative Dixon introduced § 204 as a floor amendment to the Special

---

[7] Under the authorities referenced by IEEPA the President may preserve the *res* in a variety of ways. He may simply prohibit any transfer of the *res pendente lite.* He may also condition any transfer on the receipt of a license which would be issued only upon certification that the defendant had deposited an amount equivalent to the fair market value of the *res* with the court in which the litigation was being conducted. As the President's signing statement makes clear, § 204 "does not directly specify which of the many executive powers referenced by the International Emergency Economic Powers Act should be employed," and the President therefore "retains the discretion to select those powers that are appropriate to carry out the legislation's purposes." Presidential Signing Statement, Special Foreign Assistance Act, 22 Weekly Comp. Pres. Doc. 1453 (Oct. 27, 1986).

For convenience, in the rest of the opinion we will denominate Presidential action to preserve Duvalier assets *pendente lite* as an "asset freeze." We emphasize, however, that "freeze" is an umbrella term encompassing a variety of actions that the President may take under the authorities referenced by IEEPA in order to preserve the Duvalier assets.

4

Foreign Assistance Act of 1986. His speech is the only legislative history explaining this section. Representative Dixon's speech in pertinent part is as follows:

> When the Duvaliers fled Haiti in February, they not only left the country in millions of dollars of debt, but with less than $1 million in foreign reserves.
>
> Without foreign exchange reserves to buy even the bare necessities, including food and fuel, the Government urgently must recover the money the Duvaliers siphoned off.
>
> The Government of Haiti is attempting to locate and recover those assets through legal means.
>
> But virtually every relevant jurisdiction, both in the United States and abroad, requires the posting of some form of bond to secure the issuance of orders of attachment or judicial seizures of property.
>
> The Government of Haiti is unable, without assistance, to post the necessary security bond because of its lack of assets.
>
> My amendment is simple and straightforward: *To assist the new Government of Haiti to have its day in court in its attempt to reclaim wealth which was allegedly stolen by Haiti's former President and his associates.*
>
> *The amendment would require the President to use authorities in the International Economic Powers Act to freeze assets of Duvalier and his associates so that these assets cannot be removed during the period which Haiti's claims are considered through regular legal processes.*

132 Cong. Rec. 19717–18 (1986) (emphasis added).[8]

---

[8] Representative Dixon's speech continued as follows.

I can understand that some do not like to see the emergency powers applied in a case such as this where the emergency is not one facing the United States but instead confronts a friend. If we can develop another way to be helpful in a timely manner, I would welcome it But if we wait, some of the wealth that belongs to the Haitian people may be irretrievable [sic] lost. I would hope that the Foreign Affairs Committee will look for a permanent way of providing authority to the President to help countries in Haiti's position in the future but for Haiti the time is now.

We do not know whether any of the funds skimmed off through years of corruption came from the U.S. Treasury. We should act to help assure that the moneys in the United States are given to their rightful owners and not lost forever because Haiti is too poor to press its claims effectively.

I believe that the interim Government of Haiti, under the Lieutenant General Namphy (Namphee), is seriously committed to a transition from a military council to a democratically elected civilian government

A law firm — Stroock, Stroock, & Lavan — has been retained by the Government of Haiti to assist in recovering these assets.

I hope you will support my amendment and help the Government of Haiti in recovering the funds.

132 Cong. Rec. at 19718.

Given the text of the statute and its legislative history, we therefore cannot agree with Treasury's position that the President could (1) refuse to freeze the Duvalier assets subject to legal proceedings even if such action were necessary to prevent these assets from being transferred or dissipated before the conclusion of the litigation; and (2) simply choose to investigate in an attempt to identify other Duvalier assets within the jurisdiction of the United States in order to satisfy the statutory requirement that the President exercise authorities referenced by IEEPA. If Duvalier assets subject to litigation would be dissipated without an asset freeze, it would not be sufficient, in our view, for the President to limit his action to investigating whether Duvalier has other assets in the United States not at present subject to litigation. Since Haiti lacks the funds to preserve the *res pendente lite*, Haiti would face, according to the congressional findings, the same difficulties with respect to any such newly discovered assets as it now faces with respect to the assets that are in litigation. Congress could not have intended that the assistance rendered by the President leave Haiti in the same situation that the legislation was designed to ameliorate.[9]

We do not agree, however, with counsel for the Government of Haiti that the statute requires the President to freeze all the Duvalier assets that are within the

_____

[9] We have also concluded that Congress' direction that the President take action to preserve a *res* held in the name of a foreigner pending judgment determining title to the *res* is within Congress' constitutional powers. First, it is clear that freezing Duvalier assets *pendente lite* does not constitute a Bill of Attainder. In *Nixon* v. *Administrator of General Services*, 433 U.S. 425 (1977), the Supreme Court determined that legislation depriving former President Nixon of the custody of his records was not a Bill of Attainder, because the legislation did not represent a deprivation traditionally forbidden by the Bill of Attainder Clause nor the functional equivalent of such a deprivation. The Court held that the deprivation was not a forbidden functional equivalent because the legislation had a legitimate nonpunitive purpose and the legislative record did not reflect a punitive legislative motive. *Id.* at 475–84. Under the *Nixon* test, freezing Duvalier assets does not violate the Bill of Attainder Clause. Such an action is not one, like the confiscation of property, that is traditionally forbidden by the Bill of Attainder Clause Nor is the action a functional equivalent, because the legislation has the legitimate nonpunitive purpose of aiding a foreign country and the legislative record displays no punitive motive. It should also be noted that the legislation leaves the ultimate issue of the title to these assets to the determination of courts under applicable state laws.

Second, the congressional action is not an improper usurpation of judicial power In *Dames & Moore* v. *Regan*, 453 U.S. 654 (1981), the Supreme Court held that under the authority delegated to him by IEEPA, the President could nullify attachments that various plaintiffs had obtained on Iranian property in both state and federal courts. Although the Court did not address the precise issue of whether this action usurped judicial powers because of its interference with pending litigation, the Court, in upholding the constitutionality of the nullification, implicitly held that the action was not a usurpation. *A fortiori*, freezing assets pending litigation — an action which permits an ultimate judicial determination on the merits — is not an unconstitutional usurpation of judicial power. Moreover, the Supreme Court has specifically upheld against separation of powers challenge a federal statute that assured plaintiffs that they would receive consideration of the merits of their claim despite a judicial decision *specifically* holding that the claim was barred by res judicata. *United States* v. *Sioux Nations*, 448 U.S. 371 (1980) (upholding statute that provided for review on the merits of an Indian Claims Commission finding, despite Court of Claims decision refusing to reach merits on the basis of res judicata).

Nor does Congress' direction to the President unconstitutionally interfere with his foreign policy prerogatives. Congress' authority to order a freeze of foreign assets, like its power to delegate such authority to the President under IEEPA, derives from the Foreign Commerce Clause. To be sure, Congress' direction in this case may have some incidental effect on the President's ability to conduct foreign policy. Other congressional action under the Foreign Commerce Clause, however, like the legislation restraining investment in a particular country or the imposition of tariffs, has a far more direct effect on the President's ability to conduct foreign policy. Yet to our knowledge no court has ever suggested that such legislation is unconstitutional for this reason.

6

jurisdiction of the United States. Through its findings in § 204(a), Congress defined Haiti's problem as that of being unable to secure assets in legal proceedings. Moreover, the mandate in § 204(a) refers specifically to assisting the efforts of Haiti to recover the Duvalier assets through legal proceedings. The legislative history also tends to confirm that the President's obligations are triggered by the existence of legal proceedings. As Representative Dixon stated in his remarks quoted above, § 204 "would require the President to use authorities . . . to freeze assets of Duvalier and his associates so that these assets cannot be removed during the period which Haiti's claims are considered through regular legal processes." 132 Cong. Rec. at 19717.

We therefore agree with Treasury that if the United States could somehow participate in the litigation over Duvalier assets to persuade the courts to preserve the assets, without bond, pending the conclusion of litigation, an assets freeze under § 204 would not be necessary because the problem Congress sought to address would no longer exist.[10] We note, however, that the Civil Division has considered the possibility of such participation but has concluded that such efforts would be unlikely to succeed.[11]

---

[10] In this event, § 204's mandate could be satisfied by investigating the existence of Duvalier assets other than those subject to pending litigation.

[11] We do not think that the United States may avoid an assets freeze under § 204 by requiring that the Haitian government take action in litigation that it does not believe is in its best interests. For instance, counsel for the Haitian government has stated that Haiti will not file a RICO action against Duvalier in order to obtain federal court jurisdiction. Section 204 does not contemplate that the President will condition his assistance to Haiti on its filing a new suit or in taking some other action, but rather contemplates unilateral action by the President under the authorities referenced by IEEPA.

For similar reasons, we do not believe the United States may require Haiti to accept a grant of foreign assistance given under the condition that Haiti use the grant to post bond in pending litigation against Duvalier assets. Section 2346(a) of Title 22 authorizes the provision of Economic Support Funds as follows:

> The Congress recognizes that, under special economic, political, or security conditions, the national interests of the United States may require economic support for countries in amounts which could not be justified solely under part I of subchapter I of this chapter. In such cases, the President is authorized *to furnish assistance to countries and organizations, on such terms and conditions as he may determine,* in order to promote economic or political stability . . . .

(Emphasis added.)

The State Department argues that assistance, as the term is used in § 2346, refers only to funds which are provided under an arrangement with the beneficiary country. *See* Memorandum from Kenneth J. Vandevelde, Office of the Legal Advisor, Department of State to John O. McGinnis, Office of Legal Counsel, Department of Justice (Dec. 16, 1986). Therefore a unilateral decision by the United States to pay funds to a federal or state court or a bonding company for the benefit of Haiti would not constitute assistance as that term is used in § 2346. We agree with the Department of State's conclusion, because § 2346 clearly contemplates providing funds to countries rather than disbursing funds on behalf of countries without their consent. Therefore, in order to have foreign assistance funds used to post bond, the United States would have to give a conditional grant or loan to Haiti for this purpose. Haiti would be at liberty to refuse any funds provided under this condition and the United States would continue to be obligated to take action under § 204 of the Foreign Assistance Act.

We also note that the Department of State believes that the Special Foreign Assistance Act of 1986 would, in any event, preclude the provision of funds to Haiti to pay bonds, because Congress chose another means to satisfy the bond by granting the President the authorities referenced by IEEPA We would only need to reach this argument if Haiti demonstrated a willingness to accept a grant on the condition that it be used to post bond

7

## Conclusion

We believe that § 204 of the Special Foreign Assistance Act of 1986 requires the President to prevent Duvalier assets that are subject or become subject to litigation from being dissipated until a final judgment on the ownership of the assets has been rendered. The President's obligations, however, are limited to actions necessary to prevent the removal of Duvalier assets which are subject to litigation. The statute thus does not require the President to freeze all Duvalier assets. Finally, if the United States government is able to preserve Duvalier assets *pendente lite* by means other than an assets freeze, such as by filing amicus briefs which persuade state courts to suspend their bond requirement, the President would not be required to exercise his authority under § 204.

SAMUEL A. ALITO, JR.
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

8